IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN J. OTERO-NEGRON**<br>**Petitioner**<br><br>v.<br><br>**UNITED STATES OF AMERICA**<br>**Respondent** | **Civil No. 04-1221(PG)**<br>[Related to Criminal No. 99-280(PG)] |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Juan J. Otero-Negrón (hereafter "Otero") filed a Verified Petition to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 on March 19, 2004 (**Docket No. 1**). Otero asserts that he was denied effective assistance of counsel during pretrial proceedings and at the change of plea hearing. Otero requests that his conviction be vacated and that he be allowed to withdraw his guilty plea and proceed to trial. The government asks that the petition be rejected and that the conviction be affirmed (**Docket No. 14**). Héctor A. Deliz, who was counsel for Otero during the criminal proceedings, also filed a response to Otero's petition (**Docket No. 16**).

This matter was referred to the undersigned for report and recommendation (**Docket No. 3**). For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the petition be **DENIED**.

### I. Factual Background

Otero was indicted on September 7, 1999, and charged in a two-count indictment (Criminal Case No. 99-280(PG), Docket No. 10). Count One charged carjacking in violation of 18 U.S.C. §§ 2119(2) and 2, and Count Two charged him for the illegal use of a firearm to commit a crime of violence (carjacking) in violation of 18 U.S.C. §§ 924(c)(1)(a) and 2.

During the discovery process and pursuant to Federal Rule of Criminal Procedure 16, on October 18, 1999, the government disclosed to Otero certain evidence or materials. These

materials included Police Report 99-2-074-02055 (Rpt. 331), which consisted of five pages (**Docket No. 9**, Ex. 1).

The record reflects that Otero was identified following three photospreads and a line-up. A suppression hearing was held on March 28, 2001, with Otero requesting that the identification of him be suppressed (Criminal Case No. 99-280(PG), Docket Nos. 40, 52, 82). Otero contended that photospread No. 3 and the line-up should be suppressed as they were "impermissibly suggestive." During the suppression hearing two witnesses were called by the government: Pablo E. Maldonado-Guardiola (hereafter "Maldonado") and F.B.I. agent Antonio Castañeda, Jr. (hereafter "Agent Castañeda").

Maldonado was the victim of the carjacking. He is an agent with the Police of Puerto Rico. He testified that on May 12, 1999, he was off-duty and while at an ATM machine located at a shopping mall in Vega Alta, he was accosted by two individuals. At the time Maldonado was armed with his service revolver which was tucked into the waistband of his pants and was underneath his shirt. One individual approached Maldonado from the back and, while pulling Maldonado by the arm, was also pushing him towards his car. The other individual was walking towards Maldonado and was pointing a nickel plated revolver at him. Maldonado did not see the face of the person who was pulling him by the arm, but that person touched Maldonado's waist and felt Maldonado's weapon. The individual pulled Maldonado's weapon from his waist band and told the person in front of Maldonado (his accomplice) that Maldonado had a weapon and that Maldonado was a policeman. The individual holding the nickel plated revolver struck Maldonado on his nose with his hand. Maldonado fell to the ground and, as he was trying to get up, he looked into the face of the person carrying the nickel plated revolver, who was standing before him. That person fired the weapon. Maldonado testified that nothing prevented him from

seeing the individual's face and nothing impeded his vision. He further testified that he was struck by the bullet on the outer part of his right armpit and that the bullet exited through his back near his spinal cord and neck. The individual then got into Maldonado's car and left the area.

During the investigation of the case, Maldonado was shown three photo spreads. Maldonado was able to identify the shooter from the third photo spread. Subsequently, during a line-up, Maldonado also identified the person who had committed the carjacking. That person was identified as Otero, the petitioner herein.

Agent Castañeda was the primary investigator assigned to this case. He testified as to the procedures employed in the three photo arrays and the line-up. He also testified that Maldonado's service revolver was recovered a week or two after the carjacking in a vehicle in Bayamón. Agent Castañeda indicated that the operator of that vehicle, once interviewed, admitted he had purchased the weapon from an individual who was known as "José;" later identified as Otero.[1]

The Court denied the motion to suppress the identification (Criminal Case No. 99-280(PG), Docket No. 54). In its Opinion and Order the Court concluded that Maldonado had had eye to eye contact with the man carrying the revolver, looking directly at his face, his eyes, his mouth and, thus, defendant's identification was reliable. *Id.* at p. 2.

The record also reflects that Otero and the government had entered into plea negotiations prior to the time in which the suppression hearing was held (Criminal Case No. 99-280(PG), Docket No. 48). Plea negotiations continued following the suppression hearing and Otero entered a guilty plea on May 17, 2001. *Id.* at Docket Nos. 53, 56, 57. Otero entered his guilty plea

---

[1] Defendant's full name is Juan José Otero-Negrón.

in open court. Prior to accepting defendant's guilty plea, the following excerpted colloquy occurred between District Judge Juan M. Pérez-Giménez and Otero.

> THE COURT: And do you know what you will be doing here this morning?
> THE DEFENDANT: Yes.
> THE COURT: What do you understand that you will be doing here this morning?
> THE DEFENDANT: Because of an agreement that was reached between my attorney and the U.S. Attorney's office.
> THE COURT: For you to do what?
> THE DEFENDANT: To make a guilty plea.
> THE COURT: You are going to plead guilty to count one, is that correct?
> THE DEFENDANT: That is right.
> THE COURT: And do you know what you have been charged with in count one?
> THE DEFENDANT: Yes.
> THE COURT: And there is an offense commonly known as carjacking?
> THE DEFENDANT: Yes.
> THE COURT: Have you had enough time to consult with your attorney before this morning?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with his services up to now?
> THE DEFENDANT: Very satisfied.

Criminal Case No. 99-280(PG), Docket No. 83, pp. 4-5.

> THE COURT: Has anyone threatened you in anyway to induce you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Has anyone forced you in any way to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Has anyone offered you any reward or other things of value to get you to plead guilty?
> THE DEFENDANT: No.

Criminal Case No. 99-280(PG), Docket No. 83, pp. 8-9.

> THE COURT: At paragraph ten [of the plea agreement] you are representing to the court that you are satisfied with your attorney, Mr. Héctor Deliz and he has rendered effective legal assistance to you. Is that correct?
> THE DEFENDANT: That is right.

Criminal Case No. 99-280(PG), Docket No. 83, pp. 11-12.

> THE COURT: Accompanying this plea agreement there is a version of facts which you will hear and you will state whether you are in complete agreement and you agree that those facts are accurate in every respect and that if the case had gone to trial with those facts, the

>                             government could have proven you guilty beyond a reasonable doubt. It that correct?
> **THE DEFENDANT:** Yes. . . .
> **THE COURT:** And you are representing to this court that you are acting freely and voluntarily and pleading guilty because in fact you are guilty of the charges contained in count one of the indictment. Is that correct?
> **THE DEFENDANT:** Yes.

Criminal Case No. 99-280(PG), Docket No. 83, pp. 12-13.

The Court then read the charges contained in Count One and asked Otero if that was what he had done and if that was what he was pleading guilty to, and Otero replied "Yes." *Id.* at p. 14. Next, the Court, while making clear he had presided over the suppression hearing and, thus, was fully aware of the facts, demanded from the government a summary of the evidence available. The government advised the court of the evidence it would have presented had the case gone to trial. Following the government's presentation, the Court asked counsel for Otero if he had received discovery from the government and, at that time, Attorney Deliz replied, "Yes, we have, Your Honor and we have discussed it with our client." *Id.* at p. 15. Next, the Court discussed the facts of the case noting that Maldonado, the victim, an off duty police officer, had identified Otero as the person who had shot him. The Court specifically noted that the victim "was able to see the defendant." *Id.* at p. 15.

Sentencing was held on February 15, 2002. *Id.* at Docket Nos. 66, 80. At the time of the sentence Otero made a lengthy allocution and even asked the victim in the case to forgive him. *Id.* at Docket No. 80, p. 9. Otero was sentenced to a term of 235 months imprisonment as to count one, with the remaining count being dismissed. *Id.* at Docket No. 80, pp. 12-13.

Judgment was entered the same day as sentencing (Criminal No. 99-280(PG), Docket No. 67). Otero appealed the judgment of conviction and sentence. *Id.* at Docket Nos. 69, 71. On appeal Otero argued the issue that his counsel was ineffective because information contained in

a police report, which revealed or indicated that the gunshot had entered the victim's shoulder from the back, was information that should have been used at the hearing on the motion to suppress and that his trial attorney should have advised him of the existence of such data within the police report, prior to entry of a guilty plea. *Id.* at Docket No. 87. The First Circuit Appellate Court advised Otero that this issue was better presented in a collateral proceeding rather than on direct appeal. *Id.* at Docket No. 87; *United States v. Otero-Negrón*, No. 02-1297 (1st Cir. Aug. 14, 2003). The judgment was affirmed, without prejudice, to Otero raising the ineffective assistance of counsel claim in a 28 U.S.C. § 2255 petition. *Id.*

On March 19, 2004, Otero filed the present petition pursuant to 28 U.S.C. § 2255 (**Docket No. 1**). Otero claims as his ground for relief that trial counsel provided him with ineffective legal representation. He claims his counsel was ineffective in that he failed to make him aware of certain discovery which was exculpatory in nature and that his counsel failed to bring to the forefront such exculpatory evidence during the suppression hearing of March 28, 2001.

**II. Conclusions of Law**

    **A. Standard**

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief. The petitioner may assert that: 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) the sentence was in excess of the maximum authorized by law; and 4) the sentence is otherwise subject to collateral attack. A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. §2255. However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. *Barrett v. United*

*States*, 965 F.2d 1184, 1186 (1st Cir. 1992). In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case. *Id.*; *accord, Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).

Once sentence has been imposed, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255. *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997). "A defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered." *United States v. Miranda-Santiago*, 96 F.3d 517, 522 (1st Cir. 1996) (*citing United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996)). A defendant, who never sought to withdraw his plea before the district court and challenges it for the first time on collateral attack under a § 2255 motion, bears a high hurdle. The defendant must come forward with sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962).

Also, a prisoner who invokes § 2255 is not entitled to an evidentiary hearing as a matter of right. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). "A hearing is not necessary where a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *See United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir. 1989) (internal quotations omitted). Inasmuch as the files and records of this case establish that petitioner's allegations are without merit and are not supported by the record, no hearing is required in connection with any issues raised within the Petition.

### B. Ineffective Assistance of Counsel

Otero claims that his trial counsel, Héctor A. Deliz, was ineffective for failing to make him aware of discovery which Otero claims was exculpatory in nature. The evidence Otero refers to

is Police Report 331, Complaint No. 99-2-074-02055. Said report, the record reflects, was provided by the government during discovery proceedings. The police report states that Maldonado was assaulted by several individuals and "using a firearm they shot him [Maldonado] once in the back. He was taken to the Vega Alta Health Center and he was attended to by Dr. Powreil #5280, who diagnosed bullet wound with entrance on the back, right side, and exit on the chest, right side, being referred to the Bayamón Regional Hospital to continue treatment" (**Docket No. 9**, Ex. 2). While the Court was provided with copy of the police report, it was not provided with the medical records from Vega Alta Health Center or Bayamón Regional Hospital.

Although the police report was not identified by the government as exculpatory evidence, Otero contends that it is.[2] Otero bases this claim on evidence presented at the suppression hearing indicating that Maldonado had been shot as he stared at the shooter, later identified as Otero. Following the suppression hearing, the court documents and record all indicate that Maldonado looked directly at Otero as Otero shot Maldonado in the right shoulder area, near the armpit (Criminal Case No. 99-280(PG), Docket Nos. 54, 56, 64). These documents include the Opinion and Order denying the motion to suppress identification, which contains the trial judge's factual findings, the plea agreement and the presentence investigation report, which summarized the probation officer's interview with Otero and reflects that Otero admitted to the commission of the offense charged. *Id.* Otero contends that without being informed by counsel about the report's contents, he had no way of knowing where the bullet entered Maldonado's body and, as a result, he accepted Maldonado's testimony during the suppression hearing that the bullet had entered Maldonado's body through the front.

---

[2] The government produced the police report, along with other discovery materials. The transmittal letter stated that "as of this date, no exculpatory evidence has been uncovered" (**Docket No. 9**, Ex.1)

Otero argues that his trial counsel was ineffective for failing to bring the exculpatory discovery to the forefront during cross-examination at the suppression hearing, and that he was prejudiced as a result of counsel's inaction. More particularly, Otero argues that because of this contradiction of being shot in the side while staring at the shooter (wound with front entrance) versus being shot through the back, Attorney Deliz should have thoroughly cross-examined Maldonado regarding the veracity of the events supporting Maldonado's identification of Otero. Otero contends that had he known of the exculpatory evidence there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial.

We begin our analysis by noting that the U.S. Supreme Court has set forth a two-prong test to determine whether a defendant has been denied a Sixth Amendment right to effective assistance of counsel. A conviction may be set aside because of ineffective assistance of counsel if: (a) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *accord*, *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982-83 (1st Cir.1989). This standard applies to challenges to guilty pleas, as well as attacks on convictions resulting from trials. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In a post-conviction proceeding, the burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993).

Here, petitioner contends that his plea was not voluntarily and knowingly entered. If a defendant's guilty plea has not been entered voluntarily, it has been obtained in violation of due process and is, therefore, void. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997). In order to satisfy the due process guarantee, a guilty

plea must be entered "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Noriega-Millán*, 110 F.3d at 166 (1st Cir. 1997).

In order to facilitate the entry of a voluntary guilty plea, Federal Rule of Criminal Procedure 11(c)[3], in relevant part, requires district courts to proceed in the following manner prior to accepting a guilty plea:

> **(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and
>
> (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
>
> (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self- incrimination; and
>
> (4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial.
> . .

Fed.R.Crim.P. 11(c) (2001).

---

[3] Subsequent to his guilty plea, the rule was amended on December 1, 2002, and the rule regarding the requirements for guilty plea hearings is now found at Rule 11(b).

Compliance with the procedures of Rule 11 enables the district court to determine for itself the voluntariness of the plea and "facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary." *United States v. López-Pineda*, 55 F.3d 693, 696 (1st Cir. 1995) (citations omitted); *accord, United States v. Noriega-Millán*, 110 F.3d at 166 (1st Cir. 1997).

Attorney Deliz advises the Court that all evidence provided by the government was hand delivered to Otero (**Docket No. 16**). Attorney Deliz delivered copy of all government reports and documentary evidence to Otero for his verification and keeping. Further, said evidence was personally discussed with Otero and thoroughly revised and cross-matched for the suppression hearing held on March 28, 2001. After discussing the evidence with Otero, Attorney Deliz advised him to safeguard it as same consisted of the originals of the documents produced by the government. Deliz also indicates that documents in English were personally interpreted and discussed. However, it shall be noted that the police report in question is written in Spanish.

Attorney Deliz advises the Court that he cannot affirm if the issue of the bullet's entry and path was specifically discussed with Otero, but he states that it was an aspect of serious consideration because there was only a general description of the shot and the bullet's entry. Attorney Deliz recalls that on the date of the suppression hearing he spoke to Maldonado, the victim, and asked to see the bullet's entry and exit wounds. Attorney Deliz was then able to verify that the bullet entered in the middle-rear half of Maldonado's armpit and exited at the upper part of Maldonado's neck, less than an inch from the spinal cord. Attorney Deliz recalls that during the hearing, Otero also gave him his thoughts on Maldonado's demeanor and credibility.

Attorney Deliz advises the court that, even considering the alleged inconsistency within a police report, in light of the facts regarding Otero's criminal history, the positive identification,

the existence of the wound on Maldonado, the consistent testimony at the suppression hearing, the extensive documentation in the government's possession, and other serious factual and evidentiary considerations he stands by his advice that it was in the best interest of Otero to plead guilty and not proceed to trial in the case.

The record clearly reflects that the trial court fully informed Otero of the conditions and consequences of his guilty plea during the change of plea hearing, and that Otero expressly acknowledged such understanding. Further, the record is clear that Otero was competent and fully aware of his actions. Otero also indicated that he was "very satisfied" with the representation by his attorney. Finally, Otero admitted that he committed the offenses for which he was charged and agreed with the summary of evidence presented by the government (Criminal No. 99-280(PG), Docket No. 83). Subsequently, while interviewed by the probation officer and as reflected within the presentence investigation (PSI) report, Otero clearly admitted having committed the offense charged. (*See* PSI at p. 3.)

The record does not demonstrate that Otero received ineffective assistance of counsel. More so, the record reflects that during the change of plea when the Court asked Attorney Deliz if he had received discovery from the government, Attorney Deliz replied, "Yes, we have, Your Honor and we have discussed it with our client" (Criminal No. 99-280(PG), Docket No. 83 at p. 15). Included in the discovery package was the police report in question. Notably, Otero did not dispute this statement in open court. Additionally, Attorney Deliz was cognizant of the issue regarding the point of entry of the bullet, and personally assured and viewed the entrance and exit wounds of Maldonado. In doing so, he verified that the bullet entered near the middle-rear half of the right armpit and exited at the upper part of Maldonado's neck. This, of course, was an issue subject to verification and clarification while in court, would it have been raised in cross-

Civil No. 04-1221(PG)                                                                                          Page No. 13

examination. More so, Attorney Deliz also took into consideration all aspects of the case against Otero in advising him to enter a guilty plea. These factors included, the facts of the case, the positive identification of Otero (event that occurred twice), Otero's criminal history category (which included prior convictions for attempted murder,[4] robbery and weapons violations), the wound of Maldonado which Attorney Deliz personally verified (and the trial court could have easily verified as well), and the remaining documentation and evidence in the case. In light of these foregoing, the undersigned cannot say that the performance of Otero's attorney fell below an objective standard of reasonableness.

Finally, Otero failed to come forward with sufficient evidence to demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice." Indeed, he was positively identified by Maldonado as the perpetrator of the crime against him. Notably, the Court upheld this identification following the suppression hearing. More so, during the Rule 11 hearing, Otero admitted committing the crime of carjacking and agreed with the version of the facts as set forth in the plea agreement and as explained to him at the hearing. Accordingly, it is **RECOMMENDED** that the petition for relief under 28 U.S.C. §2255 be **DENIED**.

### III.    Conclusion

Based upon the foregoing analysis, this Magistrate-Judge **RECOMMENDS** that petitioner's motion under § 2255 (**Docket No. 1**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation

---

[4] The PSI reflects that, similary in 1991 and 1992 in three separate incidents, defendant, while in possession of a weapon, had shot and wounded three victims.

waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 31st day of January, 2005.

S/AIDA M. DELGADO-COLON
U.S. Magistrate-Judge